IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 27, 2012 Session

IN THE MATTER OF: CAYDENCE B. (d.o.b. 06/22/04) AND
KIMBERLY B. (d.o.b. 10/14/07)

Direct Appeal from the Juvenile Court for Davidson County
No. 2007-004334 PT # 134994 and 2009-004304 PT # 135010
Betty Adams Green, Judge

No. M2011-02073-COA-R3-PT - Filed August 21, 2012

This is a termination of parental rights case. The trial court terminated Mother's parental
rights upon its finding, by clear and convincing evidence, of abandonment, persistence of
conditions, and that termination is in the best interests of the children. We conclude that the
trial court erred in finding persistence of conditions. However, we affirm the trial court's
finding of abandonment and that termination of Mother's parental rights was in the best
interests of the children.

Tenn. R. App.P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in
part, Reversed in part & Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and
J. STEVEN STAFFORD, J., joined.

C. Michael Cardwell, Nashville, Tennessee, for the appellant, Carmenita C.

Kelli Barr Summers, Brentwood, Tennessee, for the appellees, Christopher Prince, Leann
Prince, Brian Smith and Amanda Smith.

Lisa M. Fiehweg, Nashville, Tennessee, Guardian ad Litem.

# MEMORANDUM OPINION[1]

## I. Background and Procedural History

Carmenita C. ("Mother") and Billy Joe B. ("Father") have four minor children together. Two of the children, Caydence B. ("Caydence") (d.o.b. 6/22/04) and Kimberly B. ("Kimberly") (d.o.b. 10/14/07), are the subject of this appeal. In July 2009, the Department of Children's Services ("DCS") received a referral that Mother had left the children for six (6) days in the home where she was living, and her roommate could no longer care for them. When asked why she left the children, Mother told DCS that she needed a break from raising four children on her own. One week later, DCS received another referral that one of the children was sexually abused by a registered sex offender living in the home with Mother and the children.[2] After returning home, Mother decided to follow through with her previous plans to enter the military, which necessitated placement of the children. Mother placed the children in the care of her sister and signed a power of attorney for each. The children were later split up, however, once the maternal aunt became unable to care for them.

On August 17, 2009, DCS held a Child and Family Team Meeting to discuss placement of the children given Mother's plan to enter the military. The children were placed in four different homes. Kimberly was placed in the home of Brian and Amanda Smith (the "Smiths"), with whom she was already living before the Child and Family Team Meeting. Similarly, Caydence was placed in the home of Christopher and Leann Prince (the "Princes"), with whom she was already living before the Child and Family Team Meeting. On October 19, 2009, Mother entered the military to begin basic training. Although Mother signed a power of attorney for each child, the custodians of the four children filed a joint petition for custody. On January 28, 2010, after conducting a hearing on the petition, the trial court entered an Agreed Order for Change of Custody awarding custody of the children to their respective custodians.

While Mother was in basic training, she suffered injuries to her hips and knees which required extensive rehabilitation. As a result of these injuries, Mother received an honorable

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]The registered sex offender later admitted to and was incarcerated for the abuse.

discharge from the military on July 30, 2010. Although Mother had returned home from her military service, she did not inform the Princes or the Smiths of her return until August 9, 2010. Thereafter, on September 30, 2010, the trial court conducted a hearing on a Petition to Set Child Support filed by the Princes on behalf of Caydence. The trial court concluded that neither Mother nor Father had paid any amount to the Princes to support Caydence since she was placed in their custody. Moreover, the trial court concluded that both Mother and Father had the ability to pay child support during that time period. Therefore, the trial court entered an order requiring Mother to pay $275 per month, and Father to pay $358 per month, which included amounts for arrears owed to the Princes.

On December 13, 2010, the Smiths filed a petition to terminate Mother and Father's parental rights to Kimberly, and the Princes filed a petition to terminate Mother and Father's parental rights to Caydence. The petitions alleged grounds of abandonment for failure to support or visit the children and persistence of conditions. On May 12, 2011, the trial court conducted a trial on the two petitions. Thereafter, on August 16, 2011, the trial court entered two separate orders terminating Mother and Father's parental rights to Kimberly and Caydence. Mother timely filed a notice of appeal to this Court, and the cases were consolidated for appeal.[3]

## II. Issues Presented

Mother presents the following issues, as restated, for our review:

(1)     Whether the trial court erred in finding, by clear and convincing evidence, that there were persistence of conditions warranting termination of Mother's parental rights,

(2)     Whether the trial court erred in finding, by clear and convincing evidence, that Mother abandoned her children by willfully failing to support or visit, and

(3)     Whether the trial court erred in finding, by clear and convincing evidence, that it was in the best interests of the children to terminate Mother's parental rights?

[3]Father did not file a notice of appeal in this matter. Therefore, the focus of our discussion is limited to Mother's parental rights.

### III. Standard of Review

We review a trial court's findings of fact de novo upon the record, according a presumption of correctness to the findings unless a preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citation omitted). No presumption of correctness attaches to a trial court's conclusions of law. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000) (citation omitted). We will not reevaluate the determinations of a trial court based on an assessment of credibility unless clear and convincing evidence is to the contrary. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citation omitted). Furthermore, where the trial court has not made a specific finding of fact, we review the record de novo. *In re Valentine*, 79 S.W.3d at 546 (citation omitted).

Tennessee Code Annotated section 36–1–113 governs the termination of parental rights. This provision of the Code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> 　　(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> 　　(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36–1–113(c)(1), (2) (2010). This two-step analysis requires appellate courts to consider "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). "Although the 'clear and convincing evidence' standard is more exacting than the 'preponderance of the evidence' standard, it does not require the certainty demanded by the 'beyond a reasonable doubt' standard." *In re M.A.B.*, No. W2007–00453–COA–R3–PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007) (citation omitted). "Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth." *Id.* (citation omitted).

The heightened burden of proof in parental termination cases requires us to distinguish between the trial court's findings with respect to specific facts and the "combined weight of these facts." *In Re: Michael C. M.*, No. W2010–01511–COA–R3–PT, 2010 WL 4366070, at *2 (Tenn. Ct. App. Nov. 5, 2010) (quoting *In Re: M.J.B*., 140 S.W.3d 643, 654 n.35 (Tenn. Ct. App. 2004)). Although we presume the trial court's specific findings of fact to be correct if they are supported by a preponderance of the evidence, we "must then determine

whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion." *Id.*

## IV. Analysis

### A. Persistence of Conditions

We begin our analysis by addressing the trial court's ruling that persistence of conditions warranted the termination of Mother's parental rights. Tennessee Code Annotated section 36-1-113(g)(3) establishes a ground for termination if:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>    (A)  The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>    (B)  There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>    (C)  The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A)-(C). A finding of persistence of conditions is permissible only if clear and convincing evidence is presented to establish each statutory element. *In re Giorgianna H.*, 205 S.W.3d 508, 518 (Tenn. Ct. App. 2006) (citation omitted).

It is well settled, "based on the statutory text and its historical development, that Tenn. Code Ann. § 36-1-113(g)(3) applies as a ground for termination of parental rights *only* where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d 838, 874 (Tenn. Ct. App. 2005) (emphasis added). In the case at bar, however, the children were not removed from Mother's home due to dependency, neglect, or abuse. In fact, no petition to adjudicate the children dependent, neglected, or abused was ever filed, and the trial court never made findings to that effect. Instead, custody of the children was based on the agreement of the parties. This agreement was memorialized in the Agreed Order for Change of Custody entered by the trial court on January 28, 2010. Therefore, we conclude that the trial court erred in terminating Mother's parental rights based on persistence of conditions.

### B. Abandonment

Next, we address Mother's argument that the trial court erred in terminating her parental rights based upon the ground of abandonment. Tennessee Code Annotated section 36–1–113(g)(1) provides for termination if "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . . ." As pertinent to this appeal, "abandonment" means that:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i).[4] Moreover, as this Court explained in *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005):

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.
>
> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free

---

[4]As defined in Tennessee Code Annotated section 36-1-102(1)(E), "'willfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." "Token visitation" is defined in section 36-1-102(1)(C) as visitation that "constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimum or insubstantial contact with the child."

As defined in Tennessee Code Annotated section 36-1-102(1)(D), "'willfully failed to support' . . . . means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." "Token support" is defined in section 36-1-102(1)(B) as support that, "under the circumstances of the individual case, is insignificant given the parent's means."

agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* at 863–64 (citations and footnotes omitted).

It is undisputed that Mother did not visit or support the children during the four consecutive months preceding the filing of the termination petitions on December 13, 2010. On appeal, however, Mother argues that her failure to do so was not willful. Mother argues that she failed to visit because she did not have transportation. Mother further argues that the Princes, who live in Huntsville, Alabama, and the Smiths, who live in Ardmore, Tennessee, impeded any possible visitation because they would only agree to bring the children half way to meet her in Columbia, Tennessee.

We disagree. It is not the duty of the Smiths or the Princes to conduct and arrange visitation time for Mother. At no time did either of the custodians prevent or interfere with Mother's efforts to visit the children. In fact, it was the lack of effort by Mother to visit the children that eventually led to the initiation of these proceedings. Despite Mother's claimed lack of transportation during the relevant four month period, she testified that she was able to travel to and from hair appointments, doctors' appointments, and school once a week. Moreover, Mother testified that she last saw Kimberly in January 2010, and that she last saw Caydence in December 2009. Based on the record before us, we find no justifiable excuse for Mother's failure to visit the children. Therefore, we agree with the trial court's determination that Mother's failure to visit the children was willful.

Mother further asserts that her failure to support was not willful because she was unemployed and was awaiting disability payments during the four months preceding the filing of the termination petitions. After reviewing the record, we find no support for Mother's contentions. Not only did Mother fail to support the children during the relevant four month period, she failed to provide any support during the entire twenty-one (21) months in which the children were in the custody of the Smiths and the Princes. Although Mother earned $1,200 per month during her military service from October 2009 until July 2010, she failed to send any of that money to the Smiths or the Princes to support the children. While Mother claims that she was unable to pay support for the children during that time, she admitted that she paid for things she wanted for herself, which included two tattoos. Also, in August 2010, Mother incurred an obligation to pay tuition when she began an online degree program. Although Mother testified that she could not work as a result of her injuries, her testimony contains numerous inconsistencies. For example, Mother stated, "I mean, I get disability. I mean, I can go to work, but my boss said that I would just have to sit there and not lift no papers or nothing, just sit there and supervise," and "I don't hang around with anybody anymore. I go to work, and I come home." When asked by the trial judge about where she worked, Mother replied, "I work for Prospect, but right now I'm not working at all." Mother also admitted that a Veterans Administration officer informed her that she was able to work. Other than Mother's inconsistent testimony, the record contains no evidence to show that she was unable to work. Moreover, in October 2010, Mother received $594 in unemployment, none of which was used to support the children. In light of the foregoing, we agree with the trial court's determination that Mother willfully failed to support the children. Because only one statutory ground for termination need be established to uphold a trial court's decision, Tenn. Code Ann. § 36–1–113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002), we affirm the judgment of the trial court terminating Mother's parental rights based on the ground of abandonment.

### C. Best Interests

Finally, we address Mother's argument that the trial court erred in finding, by clear and convincing evidence, that termination of her parental rights was in the best interests of the children. Termination of parental rights is appropriate only if clear and convincing evidence establishes that eliminating those rights is in the best interests of the children named in the petition. Tenn. Code Ann. § 36–1–113(c)(2) (2010). Courts consider the following non-exhaustive list of factors when determining the best interests of the children:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn. Code Ann. § 36–1–113(i)(1)–(9). "Every factor need not be applicable in order for the trial court to determine that it is in the best interest of the child for a parent's right[s] to be terminated." *In re D.C.A.*, No. M2008–01279–COA–R3–PT, 2009 WL 837877, at *8 (Tenn. Ct. App. Mar. 30, 2009) (*no perm. app. filed*). The weight and relevance of these factors may vary from case to case and it is possible that a single factor is determinative. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). In evaluating the issue of best interests, the court must remember that any conflict between the best interests of a child and the adult parent "shall always be resolved to favor the rights and the best interests of the child[.]" Tenn. Code Ann. § 36–1–101(d).

It is undisputed that Mother failed to provide any support for the children during the entire twenty-one (21) months in which they were in the custody of the Smiths and the Princes. It is also undisputed that Mother failed to maintain regular visitation or contact with the children. In fact, at the time of the termination hearing, Mother admitted that she had not

seen either Kimberly or Caydence in more than a year. Clearly no meaningful relationship has been established given this prolonged absence from the lives of the children. Moreover, two weeks before the termination hearing, Mother was arrested for driving under the influence of pain medication and reckless endangerment. Although one of Mother's children, who is not involved in these proceedings, was in the vehicle at the time of Mother's arrest, Mother admitted that she did not inform the child's custodian about the arrest because she knew her visitation would be restricted. Most importantly, the Smiths and the Princes have provided the children with a safe, stable, and loving home, and they intend to adopt the children at the conclusion of these proceedings. Thus, from our thorough review of the record, we conclude that the evidence presented clearly and convincingly established that terminating Mother's parental rights was in the best interests of the children.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order finding persistence of conditions, and affirm the trial court's order finding abandonment and that termination of Mother's parental rights was in the best interests of the children. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs of this appeal are taxed to the Appellant, Carmenita C., for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE